IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH SAHAYDA, JR.**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| | ) 2:08cr937 |
| **MICHAEL J. ASTRUE**, | ) **Electronic Filing** |
| Commissioner of Social Security, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

August 5, 2009

**I.   INTRODUCTION**

   Plaintiff, Joseph Sahayda Jr., commenced the instant action on July 7, 2008 pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Title II and XVI of the Social Security Act, 42 U.S.C. §401 *et seq,* §1381 *et seq*.  Plaintiff filed an application for SSI and DIB on April 12, 2006, alleging that he was disabled since January 1, 1998 due to depression, low back pain, and pain in his legs, knees and feet (AR. 47-61, 288-92).  His application was initially denied, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing was held on May 10, 2007, and following this hearing, the ALJ found that Plaintiff was not disabled at any time through the date of the decision, and therefore was not eligible for SSI or DIB benefits. (AR.13-27).  Plaintiff made a request for review by the Appeals Council which was denied. (AR. 6-8), thus rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  Upon analysis and consideration of each submission, and as set forth herein, the Commissioner's Motion for Summary Judgment is granted, Plaintiff's Motion for Summary Judgment is denied and the decision of the Administrative Law Judge is affirmed.

**II.    STANDARD OF REVIEW**

When reviewing a decision denying DIB and SSI, the district court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive.  42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390.  In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. §706.

To be eligible for social security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The ALJ must utilize a five-step sequential analysis when evaluating the disability status of each claimant. 20 C.F.R. §404.1520.  The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., pt. 404 subpt. P., appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4).

If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiffs's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

### III.  FACTUAL HISTORY

Plaintiff was born on March 15, 1955, and was 52 years old on the date of the ALJ's decision. (AR. 25). He graduated high school and has past relevant work history as a door-to-door salesman and a telemarketer. (AR. 25, 70).

Plaintiff filled out a daily living questionnaire as a part of his application (AR. 92-100). In the questionnaire, Plaintiff states that occasionally he cannot get himself out of bed due to back pain. (AR. 92). He states that the pain limits his ability to shower, vacuum, perform house work, laundry, and take out the trash. (AR. 93-94). Plaintiff stated that the pain in his back and feet limit the number of steps he can climb and he requires frequent rests when shopping or walking. (AR. 94). He states that his back pain and weight make it difficult for him to make his bed and that he has to do all activities slowly due to the pain. (AR. 95). Plaintiff complained of feeling depressed, that his attention span was very short and that he has developed a fear of going into the public. (AR. 96). Plaintiff described his pain as being in his lower back and hips, that he has arthritis in his legs and knees and gout in his ankles and feet. (AR. 98). He stated that he is in pain when performing any activity and that the pain is constant. (AR. 98-99). Plaintiff states that he regularly has sleep problems. (AR. 99). He states that he uses a cane for when he is in pain from gout or his back although he doesn't like to use it in public. (AR. 100).

On May 6, 2005, Plaintiff was examined by Dr. Roberta Miller. (AR. 147-48). Dr. Miller reported that Plaintiff had not seen a doctor in over twenty years and had complaints about depression and gout. (AR. 147). Plaintiff stated that he was very depressed and that his mind was not right and that he was afraid to go into supermarkets. (*Id.*). He also had complaints of severe pain

in his feet that lasted months at a time. Dr. Miller found Plaintiff to have elevated blood pressure, but no evidence of swelling or inflamation. (*Id.*). Dr. Miller also discussed that gout is not an indication for Vicodin and that she will not be prescribing him pain medication. (AR. 148).

On July 19, 2005 Dr. Dana Brown examined Plaintiff and reported that he had daily gout pain in his feet with periodic severe flares. (AR. 142). Dr. Brown gave Plaintiff Cochicine and Allopurinol for his gout as well as Vicodin and prescribed Lexapro for Plaintiff's symptoms of depression. (AR. 143). On January 24, 2006, Dr. Brown reported that Plaintiff was in a bad mood and further stated Plaintiff was upset all the time, could not sleep and felt like a drug addict. (AR. 130). Dr. Brown reported that Plaintiff's gout flares up periodically. (AR. 125). In the report dated May 5, 2006, Dr. Brown questioned whether Plaintiff was abusing OxyContin. (*Id.*). Plaintiff was seen for a follow up visit by Dr. Brown on May 31, 2006. (AR. 124). Dr. Brown reported that Plaintiff had good days and bad days and complained of low back pain. Dr. Brown recorded Plaintiff's weight to be 305 pounds and a BMI of 42.5. (*Id.*). Dr. Brown found no wheezing or labored respiration nor did he find any muscle atrophy, weakness or abnormal gait. (*Id.*). Dr. Brown refilled Plaintiff's prescription of OxyContin for his low back pain. (*Id.*).

On October 19, 2005, Plaintiff was referred to the Sleep Disorders Center for fatigue. (AR 136). Plaintiff had an Epworth Sleepiness Scale score of 8. Dr. Roberta Miller determined Plaintiff had severe obstructive sleep apnea, however, he had a favorable response to continuous positive airway pressure ("CPAP") therapy and Dr. Miller recommended continued use of the CPAP. (AR. 138).

On November 11, 2005 Plaintiff was seen by Dr. Albert Carvelli. (AR. 133). Dr. Carvelli reported in his exam of Plaintiff that he walks with a cane, although he goes from a seated to standing position without difficulty. (AR 134). Plaintiff's motor strength in the seated position was 5/5 in all muscle groups of the lower extremities although his effort was somewhat poor. (*Id.*). Plaintiff was able to flex his waist from a standing position to 90 degrees without severe pain

although extension of the waist did cause some axial back pain (*Id.*). Dr. Carvelli diagnosed Plaintiff to have chronic low back pain and myofascial low back pain (*Id.*).

Plaintiff had a psychiatric evaluation on July 25, 2006, performed by Dr. Dominic Nkwocha. (AR. 152). Dr. Nkwocha reported that Plaintiff complained of not sleeping and feelings of isolation, guilt and hopelessness. (AR. 153). Plaintiff did not have suicidal or homicidal ideation. (AR. 154). Dr. Nkwocha diagnosed Plaintiff to have major depressive disorder, recurrent, mild and antisocial traits as well as a GAF[1] of 55.

A physical functional capacity assessment form was completed on August 11, 2006 by Dr. Angela DiSalvo. (AR. 177-182). Plaintiff was found to be able to occasionally lift fifty pounds and stand and sit for six hours a day. (AR. 178). He was additionally found to have no postural or manipulative limitations. (AR. 179). Plaintiff had a mental residual functional capacity assessment form completed for him on September 12, 2006, by Dr. Sanford Golin. Dr. Golin found Plaintiff to have moderate limitations in the ability to respond appropriately to supervisors and to get along with coworkers and peers and the ability to set realistic goals and independent plans. (AR. 184). Additionally, Dr. Golin found Plaintiff to have moderate limitations in maintaining social functioning and mild limitations in maintaining concentration, persistence or pace and activities of daily living. (AR. 196).

On August 25, 2006, Plaintiff was admitted to the Western Pennsylvania Hospital for chest pain. (AR. 213). Dr. Abdul Kahn diagnosed Plaintiff with having typical chest pain with myocardial infarction ruled out. (*Id.*). Dr. Kahn found Plaintiff to have normal sinus rhythm, no evidence of pulmonary embolism or aortic dissection and a stress test was negative for ischemia. (*Id.*).

---

[1] The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000). A GAF score between 51 and 60 indicates some moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functions (e.g., few friends, conflicts with peers or co-workers). *Id.* (emphasis in original).

On October 20, 2006 Dr. Brown noted that Plaintiff's back pain waxed and waned in intensity in correlation to his overall emotional status. (AR. 222). Dr. Brown reported on January 8, 2007, that Plaintiff's back continues to bother him, however, the OxyContin seems to be doing okay. (AR. 220).

Dr. Brown filled out a employability assessment form on April 6, 2006, marking Plaintiff as temporarily disabled due to primarily depression and secondarily lower back pain. (AR. 269). On May 7, 2007, Dr. Brown filled out a physician's report that stated Plaintiff has a permanent disability and could not engage in employment. (AR. 274-76).

Plaintiff's hearing before the ALJ was held on May 10, 2007. (AR. 311-338). Plaintiff and vocational expert Joseph Bentivenga testified and Plaintiff was represented by counsel. (AR. 313). Plaintiff testified that he sees his psychiatrist once a month and his counselor at least twice a month. (AR. 319). Plaintiff stated because of his depression and pain in his legs and feet he does not leave his house for days. (AR. 322-23). Plaintiff testified that he used a cane but he does not use it all the time because of embarrassment. (AR. 324, 331). Plaintiff also stated that his sleep is disturbed and he constantly wakes up, even when using the CPAP machine. (AR. 328). The vocational expert opined that someone that was limited to light work activity and limited to simple routine, repetitive tasks, involving simple work-related decisions and few workplace changes and limited interaction with coworkers and the public could perform the jobs of printing press feeder, garment steamer, dryer operator and room service clerk. (AR. 333-334). The vocational expert testified that the positions of press feeder and room service clerk afford a sit or stand option. (AR. 335).

The ALJ found Plaintiff to have the following severe impairments; obstructive sleep apnea; lumbago; hypothyroid; recurrent gout and arthropathy; morbid obesity; methadone dependence; major depressive disorder, recurrent, mild; and asthmatic bronchitis. (AR. 18). The ALJ determined that Plaintiff retained the residual functional capacity to perform work at the light exertional level and could perform jobs that exist in significant numbers in the national economy. (AR. 25-26).

### IV.  LEGAL ANALYSIS

Plaintiff argues that the ALJ erred in the following respects: that the ALJ improperly found Plaintiff's subjective complaints of pain not to be entirely credible; that the ALJ did not properly evaluate Plaintiff's treating and examining medical source opinions; that substantial evidence does not support the ALJ's conclusion that Plaintiff does not meet the Listing impairments; and that substantial evidence does not support the ALJ's findings as to Plaintiff's residual functional capacity ("RFC"). The Court shall address each argument in turn.

Plaintiff argues that the ALJ improperly discredited Plaintiff's subjective allegations because the ALJ did not identify contrary medical evidence and excluded portions of Plaintiff's activities of daily living that would have supported Plaintiff's allegations. When evaluating a claimant's subjective complaints the ALJ must first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. *See SSR* 96-7p, 1996 WL 374186, at *2. If such an impairment exists, then the ALJ must determine the extent to which the claimant's allegations are credible by evaluating "the intensity and persistence of the pain or symptom, and the extent to which it affects the [claimant's] ability to work." *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999).

In making this determination, the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.F.R. § 416.929©; *SSR* 96-7p, 1996 WL 374186 at *2. In this regard, there must be objective evidence of some condition that could reasonably produce the alleged pain or symptoms but there need not be objective evidence of the actual pain or symptoms. *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993); *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984). "An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective medical evidence." *Mason*, 994 F.2d at 1067 (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.

1985)). Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir.1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa.1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir.1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

Finally, the ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). However, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).

Here, the ALJ stated that "the clinical and objective findings are inconsistent with an individual experiencing totally debilitating symptomatology. The claimant's activities of daily living are also inconsistent with an individual experiencing totally debilitating symptomatology." (AR 22). The ALJ made his conclusions in part by only affording Plaintiff's subjective allegations "some credibility." (AR. 25). Plaintiff claims that the ALJ did not identify any contrary medical evidence, however, the ALJ's opinion clearly cites medical evidence that can be taken as contrary to Plaintiff's allegations. For instance, Plaintiff complained to Dr. Miller that he suffered from severe pain from gout in his feet and that his feet would swell up. Dr. Miller, howevr, found no evidence of swelling or inflamation at the time of the exam. (AR. 21, 147). A chest x-ray showed no abnormality with

Plaintiff's heart or lungs. (AR. 21).  Dr. Brown reported that Plaintiff did not have wheezing or labored breathing and that he displayed no atrophy, weakness or edema (AR. 21, 124).  Dr. Carvelli observed that Plaintiff was able to go from the seated to standing position without difficultly and was able to flex his waste to 90 degrees without severe pain. (AR. 21, 134).  Additionally, the ALJ pointed out that Plaintiff told Dr. Nkwocha that he was being seen at Allegheny East "because it would look good if I come here." (AR. 23, 156).   In reviewing the record as a whole, the ALJ's determination that Plaintiff's subjective allegations were to be afforded only some credibility is supported by substantial evidence.

Plaintiff next argues that the ALJ did not properly evaluate the treating and examining medical source opinions found in the record, in particular, the report of Dr. Brown finding Plaintiff to be permanently disabled from employment (AR. 274-76). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) .... " *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).  However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno v. Shalala,* 40 F.3d 43, 47-48 (3d Cir. 1994), *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir.1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician

that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled."). (internal citations omitted).

Dr. Brown's conclusion that Plaintiff was permanently disabled was not controlling as this decision is reserved for the Commissioner. Furthermore, the ALJ's conclusion that Dr. Brown's opinion was inconsistent with the objective findings and other medical evidence is supported by substantial evidence in the record. Indeed, Dr. Brown reported that Plaintiff's pain waxed and waned and that he seemed to be doing okay on the OxyContin. (AR. 220-22). In reviewing the record, substantial evidence supports the ALJ's conclusion that Dr. Brown's opinion was not consistent with his own objective findings and therefore minimal weight was properly afforded to Dr. Brown's opinion.

Plaintiff's third argument is that the ALJ's conclusion that Plaintiff does not meet the listed impairments was not supported by substantial evidence, specifically that the ALJ did not adequately take into account the cumulative effects of Plaintiff's severe impairments. Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,' "), *citing* 42 U.S.C. § 423(d)(2)©, and 20 C.F.R. § § 404.1523, 416.923). Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies

the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971)...."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnol v. Massanari,* 247 F.3d 34, 40 n. 4 (3d Cir. 2001) (*citing Burnett*, 220 F.3d at 119-20).

In this case the ALJ found that Plaintiff's impairments did not meet or medically equal Listing 1.00 dealing with muskculoskeletal disorders, 3.00 dealing with respiratory system disorders, and 12.00 dealing with mental/emotional disorders. The ALJ pointed out that there was no medical source in the record that opined that Plaintiff met any of the Listings. (AR. 19). Additionally, the ALJ stated that the record did not contain evidence that Plaintiff's limitations singly or in combination met any of the Listings (*Id.*). The ALJ's discussion and review of Plaintiff's medical evidence (AR. 19-25) provide support for his conclusion and in reviewing the record as a whole, substantial evidence supports the finding that Plaintiff's impairment did not meet or medically equal any of the listed impairments.

Plaintiff's last contention is that substantial evidence does not support the ALJ's assessment of Plaintiff's residual functional capacity. It is first noted that an ALJ must consider all relevant evidence when determining an individual's residual functional capacity. *See* 20 C.F.R. § 404.1545(a); *Burnett*, 220 F.3d at 121. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett,* 220 F.3d at 121, quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that

> could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5.

As discussed above, the ALJ did not err in affording only minimal weight to the opinion of disability by Dr. Brown and less than full credibility to Plaintiff's allegations. There is no indication that the ALJ failed to consider any evidence in the medical record that would require remand from this Court. Similarly, there was no err in the ALJ not relying on the medical-vocational guidelines as the record indicates that Plaintiff was claiming exertional and non-exertional limitations. *See* 20 C.F.R. pt. 404, subpt. P, appx 2, §200.00(e). In reviewing the record as a whole, there is substantial evidence to support the ALJ's assessment that Plaintiff has the residual functional capacity to perform light work that does not require more than occasional walking or standing and requires no more than simple, routine, repetitive tasks (AR. 19). To that end, there was no err in the ALJ relying on the vocational expert's opinion that was based on a hypothetical question that contained all of Plaintiff's limitations. Therefore, the ALJ's step five conclusion that Plaintiff could perform jobs that exist in the national economy is supported by substantial evidence.

### V.   CONCLUSION

In viewing the record as a whole, substantial evidence supports the Commissioner's final decision and therefore it will be affirmed.

An appropriate Order follows.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:   E. David Harr, Esquire  
      230 South main Street  
      Greensburg, PA 15601

      Lee Karl  
      Assistant United States Attorney